# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIAM EARL DRAIN,

               Petitioner,                Case Number: 2:08-CV-10950

v.                                         HONORABLE PAUL D. BORMAN
                                           UNITED STATES DISTRICT JUDGE

NICK LUDWICK,

               Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY

Petitioner William Earl Drain filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan and challenges his convictions for second-degree murder, felon in possession of a firearm, and felony firearm. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's conviction arises from the shooting death of Theodus Hinton on November 9, 2005, in the City of Detroit.

Hinton's girlfriend, Dawanda Ramaey testified that she and Hinton were walking down Gunston Street toward Hinton's house when Petitioner walked by them on the sidewalk. She noticed Petitioner because Hinton told her that Petitioner was staring at them. Hinton asked Petitioner what he was staring at. Petitioner and Hinton exchanged words, then Petitioner turned around and shot Hinton. Ramaey testified that neither she nor Hinton were armed.

Antonio Hayes, Hinton's brother, testified that he saw Petitioner and Hinton struggling

before the shot was fired. He did not know if the gun was present when the two began struggling. Hayes saw the men arguing and walked toward them from a distance of two to three blocks. As Hayes reached the two men, Hinton was shot. Hayes struggled with Petitioner for the gun, finally wrestling it from Petitioner. Petitioner then fled.

Several eyewitnesses testified. Chartonya Mason initially told police that Petitioner shot Hinton when the men were two to five inches apart, but upon examination by the prosecutor estimated the separation to be approximately six feet. She testified that a second boy approached the men after the gunshot had been fired. LaTonya Garrell testified that Petitioner pulled a gun out of his shirt and shot Hinton. A third man was present, but she gave conflicting testimony about how far away the third man was at the time the shots were fired.

Jennifer Brown testified that she was a passenger in a vehicle driven by Angelita Drake that was traveling down Gunston Street at the time of the shooting. She saw Petitioner, Hinton and Ramaey together at the time of the shooting. She observed Petitioner walk around Hinton and then start arguing with him. She testified Hinton was shot at very close range and was fighting with Petitioner when the shots were fired.

Angelita Drake testified that she was driving her vehicle when the shooting occurred. She saw Petitioner and Hinton struggling together, then heard gunshots.

Detroit Police Officer Michael Carlisle testified that Petitioner gave a custodial statement on the afternoon of November 9, 2005. Petitioner stated that he came upon Hinton and his girlfriend arguing on Gunston Street. After he walked past them, he turned around to look at them because they were arguing. Hinton asked him what he was looking at and threatened him because he was in Hinton's neighborhood. According to Petitioner, Hinton then called to one of

his friends to come over. Petitioner told Hinton he did not want any trouble. Hinton's friend continued to approach him, so Petitioner pulled a gun. Hinton punched him in the face, his friend then punched Petitioner in the back of the head. Petitioner stated that this punch to the back of the head caused his gun to accidentally discharge.

Petitioner did not testify at trial.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession, and felony firearm. On March 30, 2006, he was sentenced to 28 to 68-1/2 years' imprisonment for the second-degree murder conviction, 3-1/3 to 5 years' imprisonment for the felon in possession conviction, and two years' imprisonment for the felony firearm conviction.

Petitioner filed a motion for a *Ginther* hearing in the trial court. The trial court denied the motion. *People v. Drain*, No. 05-12450-01 (Wayne County Circuit Court Nov. 17, 2006).

Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following claim:

> Trial counsel's failure to investigate, interview or subpoena witnesses who would corroborate defendant's theory of self defense constitutes ineffective assistance of trial counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Drain*, No. 271059 (Mich. Ct. App. Sept. 18, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same claim raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal.

3

Petitioner now files the pending petition for a writ of habeas corpus. He raises the same ineffective assistance of trial counsel claim raised in state court.

### III.

### A.

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

**B.**

Petitioner presents a single claim for habeas corpus relief, that his trial attorney was ineffective for failing to interview or call witnesses who would have bolstered his self-defense theory. He argues that these witnesses would have corroborated his account that he was being attacked when the shooting occurred. In support of this claim, Petitioner attached an affidavit of his wife, Carol Drain. In her affidavit, Carol Drain states that she became aware of two witnesses who could have bolstered her husband's defense. The first, Gary Green, purportedly gave a statement to police "which supported her husband's statement that he was being attacked by several young men, and only showed the gun to get them to stop." Affidavit of Carol Drain at ¶ 3. The second, an unidentified security guard at a nearby church, "saw everything." *Id.* at ¶ 5. Carol Drain testified that she advised defense counsel about the existence of these two witnesses.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399

F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). On habeas review, this Court must review Petitioner's claim "within the more limited assessment of whether the state court's application of *Strickland* to the facts of this case was objectively unreasonable." *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir.2000).

The Michigan Court of Appeals, the last state court to issue a reasoned decision regarding this claim, held, in relevant part:

> The right to effective assistance of counsel is guaranteed by the United States and Michigan Constitutions. . . . For an ineffective assistance of counsel claim, a defendant must show that "counsel's performance was deficient as measured against an objective standard of reasonableness under the circumstances and according to prevailing professional norms." *People v. Solmonson*, 261 Mich. App. 261 Mich. App. 657, 663; 683 N.W.2d 761 (2004) (citations omitted). The defendant must also show that, but for counsel's unprofessional errors, it is reasonably probable the trial outcome would have been different. *Id.* at 663-664. Decisions regarding which witnesses to call are generally matters of trial strategy; in such matters, this Court will not substitute its judgment for that of counsel. *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004). Counsel's failure to interview witnesses constitutes deficient performance only if it caused counsel to ignore evidence that would have benefitted the defendant substantially. *Id.*; *People v. Caballero*, 184 Mich. App. 636, 642; 459 N.W.2d 80 (1990). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Solmonson, supra* at 663, *citing LeBlanc, supra* at 578.
>
> To support his claim, defendant submits an affidavit from his wife, in which his wife asserts she told defense counsel about a security guard who witnessed the event. In his brief, defendant said the guard told defendant's wife that defendant was being attacked when the victim was shot. Defendant's wife also requested that defense counsel subpoena another witness who allegedly gave a statement to the police supporting defendant's account that he was being attacked by several young men. Defense counsel purportedly did not interview either potential witness. Defendant argues that counsel's failure to interview these witnesses and call them at trial constitutes ineffective assistance, as their testimony would have bolstered defendant's self defense claim or perhaps allowed the jury to decide the shooting was voluntary manslaughter.
>
> The affidavit offers no support for a claim of self-defense, which requires that a defendant honestly and reasonably believed his life was in imminent danger or

6

> that he was threatened with serious bodily harm. *People v. Kurr*, 253 Mich. App. 317, 320-321; 654 N.W.2d 651 (2002). For a defendant to lawfully use deadly force in self-defense, he must have either been the victim of a sudden and violent attack, been unable to retreat safely, been unable to use nondeadly force to protect himself, or reasonably believed his attacker was about to use a deadly weapon. . . .
>
> The affidavit does not claim the additional witnesses would testify to any of those matters. At most, the affidavit suggests one witness might testify there was a struggle, and there was already testimony on the record on that point. Defendant does not explain how additional testimony probably would have changed the outcome of the trial. . . . Defendant's own statement indicated he did not see the victim with a weapon. Defendant's statement never asserted that defendant honestly and reasonably believed his life was in imminent danger or that he felt threatened with serious bodily harm. Thus, even if the purported witnesses corroborated defendant's statement, defendant still could not justify shooting an unarmed victim as self-defense. The decision not to interview the witnesses was a decision regarding trial strategy, which we will not second-guess. . . . We conclude that defendant failed to show that counsel's assistance was ineffective.

*Drain*, slip op. at 1-2.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). "Pure speculation" about whether the outcome might have been different is insufficient to establish prejudice. *See Baze v. Parker*, 371 F.3d 310, 322 (6th Cir.2004).

The affidavit of Petitioner's wife, at best, raises pure speculation about how the additional witnesses may have impacted Petitioner's trial. The affidavit fails to identify the security guard who allegedly viewed the entire interaction and fails to provide any information as to what he may have seen. The affidavit argues that the second witness, Green, would have supported Petitioner's defense, but Petitioner fails to proffer any statement from Green as to

7

what his testimony might have been. Given the absence of any indication, beyond mere speculation, that these witnesses possessed any relevant knowledge or would have testified in a manner favorable to the defense, the Court concludes that the state court's decision that counsel was not ineffective in failing to call these witnesses was not contrary to or an unreasonable application of *Strickland*.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability. The Court also denies Petitioner leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## V.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 24, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 24, 2010.

S/Denise Goodine
Case Manager